**WO**

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| Alger Iván Rodríguez Aguilera,<br><br>    Petitioner,<br><br>vs.<br><br>Gabriela Samaniego De Lara<br><br>    Respondent. | No. CV14-1209 PHX DGC<br><br><br><br>**ORDER** |

Petitioner Alger Iván Rodriguez Aguilera has filed a "Petition for Return of Child under the Hague Convention." Doc. 1. Respondent Gabriela Samaniego De Lara opposes the petition. The Court held an evidentiary hearing on July 9, 2014. For the reasons that follow, the Court will grant the petition.

**I.    Background.**

Petitioner and Respondent are the parents of a nine-year-old daughter, referred to herein as "I.R.," who was born in Aguascalientes, Mexico in 2004. Petitioner and Respondent were not married at the time, but began living together in Aguascalientes after I.R. was born. Respondent and I.R. moved out of the home in 2006, and, after a period of reconciliation, moved out again in 2008.

Respondent continued to live in Aguascalientes with I.R. until July of 2013. The relationship between Petitioner and Respondent was difficult during this time, but the evidence demonstrated that Petitioner maintained a relationship with I.R. Between 2008 and 2013, I.R. attended a private school in Aguascalientes, had medical insurance, was

involved with numerous family members on both sides, and had friends. Using a tourist visa, Respondent left Aguascalientes with I.R. on July 5, 2013, telling Petitioner that she and I.R. would visit Respondent's mother in Arizona for one month and would then return. After arriving in Arizona, Respondent informed Petitioner that she and I.R. would not return. Petitioner asks the Court to apply the Hague Convention and order that I.R. be returned to Mexico until custody rights can be resolved in a custody action now pending in the Mexican courts.

## II.     The Hague Convention and ICARA.

The Hague Convention on the Civil Aspects of International Child Abduction seeks to deter parents from moving their children across international borders in order to gain the upper hand in custody disputes. *See Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010). With a few narrow exceptions, a court must return the child to its country of habitual residence so that the courts of that country can determine custody. *Id*. Both the United States and Mexico are signatories to the Hague Convention and are Contracting States within its meaning. Congress enacted the International Child Abduction Remedies Act, 42 U.S.C. § 11601 *et seq.* ("ICARA"), to implement the Convention.

The objectives of the Convention are "to secure the prompt return of children wrongfully removed to or retained in any Contracting State," and "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." Convention, Art. 1 (reprinted at 51 Fed. Reg. 10,494). "An action under the Convention and ICARA is not an action to determine the merits of custody rights[.]" *Koch v. Koch*, 450 F.3d 703, 711 (7th Cir. 2006).

Under Article 12 of the Convention, the Court must order the return of a minor child to its country of habitual residence if the child was wrongfully removed from that country. Removal of a child is wrongful where:

> (a)     it is in breach of rights of custody attributed to a person . . . under the law of the state in which the child was habitually resident immediately before the removal or retention; and

>    (b)   at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, Art. 3.

Even when a child has been wrongfully removed, the Court can decline to order the child's return if certain exceptions are satisfied. ICARA characterizes these exceptions as "narrow." 42 U.S.C. § 11601(a)(4). Four exception are relevant in this case. The Court may decline to return I.R. if Respondent shows that (1) Petitioner was not exercising his custody rights at the time of removal (by a preponderance of the evidence), (2) return of the child to Mexico would present a grave risk of physical or psychological harm to the child (by clear and convincing evidence), (3) return of the child would present a grave risk of placing the child in an intolerable situation (by clear and convincing evidence), or (4) the child objects to being returned and has attained an age and degree of maturity sufficient for the Court to take account of her views (by a preponderance of the evidence). Convention, Art. 13; 42 U.S.C. § 11603(e).

**III.   Analysis.**

At the beginning of the evidentiary hearing, counsel for Petitioner and Respondent agreed that I.R. was habitually resident in Mexico immediately before her removal and that Petitioner had custody rights under Mexican law.[1] In addition, Petitioner's verified petition and supporting affidavit make a sufficient showing that Petitioner was exercising his custody rights at the time of removal.[2] Given these established facts, Respondent's

---

[1] These custody rights under Mexican law, referred to as "patria potestas," recognize a parent's right to care for the child, reside with the child, and provide for the child's necessities. The rights belong to both parents. *Ramirez v. Buyauskas*, No. 11-6411, 2012 WL 606746 (E.D. Pa. Feb. 24, 2012); *March v. Levine*, 136 F. Supp. 2d 831, 842 (M.D. Tenn. 2000); Antoinette Sedillo Lopez, *International Law – U.S./Mexico Cross-Border Child Abduction – The Need for Cooperation*, 29 N.M. L. Rev. 289, 297 (1999).

[2] To show that a removal was wrongful under Article 3 of the Convention, a petitioner need only make a minimal showing that he or she was exercising custody rights at the time of removal. The person opposing return then has the burden of showing, as an exception to the return requirement, that the rights were not being exercised. *See* Department of State: Hague International Child Abduction Convention; Text and Legal Analysis, 51 Fed. Reg. 10,494, 10,510 (Mar. 26, 1986) ("State Department Regulations").

removal of I.R. was "wrongful" within the meaning of Article 3 of the Hague Convention and the Court must order I.R.'s return to Mexico unless Respondent has established one or more of the exceptions set forth above.

The Court will discuss each of the exceptions addressed by Respondent at the hearing. This discussion includes factual findings made by the Court on the basis of the testimony and documents presented during the hearing, including the Court's credibility determinations.

### A. Petitioner's Exercise of Custody.

To satisfy the Convention's requirement that he was exercising custodial rights at the time of removal, Petitioner need not have had exclusive or even primary custody of I.R. Where a father has remained in regular contact with a child, visited the child, and provided financial support, the father has exercised sufficient custody within the meaning of the Hague Convention. *Asvesta v. Petroutsas*, 580 F.3d 1000, 1018 (9th Cir. 2009). As the Ninth Circuit explained:

> if a person has valid custody rights to a child under the law of the country of the child's habitual residence, that person cannot fail to 'exercise' those custody rights under the Hague Convention short of acts that constitute clear and unequivocal abandonment of the child. Once it determines that the parent exercised custody rights *in any manner*, the Court should stop – completely avoiding the question whether the parent exercised the custody rights well or badly.

*Id.* (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1066 (6th Cir. 1996)) (emphasis added).

Petitioner was exercising sufficient parental rights to satisfy the requirements of the Convention. Evidence presented at the hearing showed that, after Respondent and I.R. moved out of his home in 2008, Petitioner continued to see I.R. regularly, took her to his parents' home, movies, parks, and out to eat, picked her up from school on occasion, accompanied Respondent and I.R. to the child's doctor appointments, provided medical insurance for I.R., and provided at least some additional financial support. These

activities satisfy the custody requirement of the Hague Convention.

Respondent's counsel argued at the hearing that Petitioner signed a document granting exclusive custody of I.R. to Respondent in 2008. The evidence on this issue was not sufficient to show that such an agreement was signed. The copy of the document placed in evidence (Exhibit 8) is not signed, Petitioner testified that he never signed the document, and Respondent gave the same testimony at one point in her testimony. What is more, even if Petitioner agreed that Respondent could have physical custody of I.R., the cases discussed above show that Petitioner could continue to exercise his custody rights within the meaning of the Convention by visiting I.R., providing some financial support for her, and otherwise remaining involved in her life.

Respondent has failed to establish by a preponderance of the evidence that Petitioner was not exercising his custody rights prior to I.R.'s removal from Mexico. This exception, therefore, does not preclude return of I.R. to Mexico.

### B.    Grave Risk of Physical or Psychological Harm.

The Convention provides that return of I.R. is not required if Respondent shows that "there is a grave risk that [the child's] return would expose the child to physical or psychological harm." Convention, Art. 13(b). The Ninth Circuit has explained that this exception "[is] 'drawn very narrowly, lest [its] application undermine the express purposes of the Convention – to effect the prompt return of abducted children.'" *Goudin v. Remis*, 415 F.3d 1029, 1036 (9th Cir. 2005) (quoting State Department Regulations, 51 Fed. Reg. at 10,509). The risk must be "grave, not merely serious," *id.*, and must be proved by clear and convincing evidence, 42 U.S.C. § 11603(e)(2)(A). The grave risk exception "is not license for a court in the abducted-to country to speculate on where the child would be happiest." *Goudin*, 415 F.3d at 1035; *see also Cuellar*, 596 F.3d at 509.

Respondent presented several categories of evidence to suggest that returning I.R. to Mexico would present a grave risk of physical or psychological harm.

### 1.    General Character.

Respondent presented evidence regarding Petitioner's general character and, it

appeared, his fitness to serve as a father. This included testimony that Petitioner is controlling and manipulative, uses profane language, has an explosive temper, was unfaithful to Respondent, partied on weekends, and, on at least one occasion, was present with a prostitute or stripper. Most of this evidence goes to Petitioner's fitness as a father or spouse, a subject the Court may not decide in this case. More will be said below about Petitioner's volatility and alleged violence.

### 2. Assaults on Adults.

Respondent presented evidence that Petitioner struck her on five different occasions. She did not testify that medical treatment was required on these occasions. Respondent also testified that Petitioner struck her 70-year-old father in the mouth during a disagreement over whether I.R. should spend time with Petitioner. Respondent testified that I.R. was present when her grandfather was struck, and the evidence suggested that I.R. was present on at least one occasion when Petitioner struck Respondent.

Respondent testified that three of the assaults on her occurred before she and Petitioner separated, which would have been in 2008 or earlier. Two assaults apparently occurred after their separation, but the Court cannot determine whether they occurred in 2008 or 2009 or closer in time to when Respondent removed I.R. to the United States. Nor can the Court determine when the assault occurred on Respondent's father.

Petitioner's violent actions toward Respondent and her father are utterly inappropriate and very concerning. As already noted, however, the Court's task under the Convention is not to decide whether Petitioner is a suitable father or good spouse, whether granting him custody of I.R. would be an appropriate decision, or whether I.R. would fare better with Respondent. The Court's task is to determine whether returning I.R. to Mexico would present a "grave risk" of physical or psychological harm. The word "grave," when used in this context, means "likely to produce great harm or danger." Webster's New Collegiate Dictionary (1981); *see also* Oxford English Dictionary ("giving cause for alarm"). And the State Department Regulations make clear that "[t]he person opposing the child's return must show that the risk to the child is grave, not

1  merely serious." 51 Fed. Reg. at 10,510. As noted, the Ninth Circuit has also
2  emphasized that this exception is "drawn very narrowly." *Goudin*, 415 F.3d at 1036.
3  Given the narrowness of this exception, and for several factual reasons, the Court cannot
4  conclude that Petitioner's assaults on Respondent and her father satisfy the grave risk
5  requirement.

6  As noted, the assaults were directed at Respondent and another adult, not I.R.
7  Other Hague Convention cases have recognized that physical abuse or threats towards a
8  spouse are not the same as physical abuse or threats toward a child. *See Nunez Escudero*
9  *v. Tice-Menley*, 58 F.3d 374, 375-78 (8th Cir. 1995) (denying defense where respondent
10  alleged that she was physically, sexually, and verbally abused by her husband and treated
11  as a prisoner by her husband and father-in-law); *Nunez v. Ramirez*, No. CV-07-01205-
12  PHX-EHC, 2008 WL 898658, at *5 (D. Ariz. Mar. 28, 2008) (evidence that petitioner
13  struck respondent several times not sufficient to show risk to the child); *Tabacchi v.*
14  *Harrison*, No. 99C 4130, 2000 WL 190576 (N.D. Ill. Feb. 10, 2000) (although
15  petitioner's behavior toward his wife was unacceptable, to qualify as grave risk of harm
16  under the Convention the risk must be to the child).

17  In addition, at least some of the assaults, and perhaps all, occurred several years
18  ago. The Ninth Circuit has instructed that the focus must be on the present – whether a
19  grave risk will exist if the child is returned *now*. *Goudin*, 415 F.3d at 1036-37 ("The
20  grave risk inquiry should be concerned only with the degree of harm that could occur in
21  the immediate future"). The fact that some or all of the assaults on adults occurred
22  several years ago mitigates to some extent the risk they now present for I.R.

23  Finally, Petitioner is not asking to be granted physical custody of I.R. He made
24  clear at the hearing that he believes Respondent is a good mother and should continue to
25  have full-time custody of I.R. Petitioner simply seeks to preserve his rights to have a
26  relationship with I.R. Thus, a return of I.R. to Mexico need not result in her being placed
27  in Petitioner's physical custody.
28  / / /

### 3. Physical Actions Toward I.R.

Respondent and I.R. testified that Petitioner slapped I.R. on one or more occasions and twisted her arm when he was angry. Respondent and I.R. did not testify that these actions caused serious physical injury or required medical attention. Nor did Respondent or I.R. explain whether these actions were disciplinary in nature or simple assaults.

Petitioner's actions toward I.R. clearly are relevant to the "grave risk" inquiry. The question is whether slapping a child or twisting her arm shows a grave risk of physical or psychological harm. As noted, the Ninth Circuit and other authorities have instructed that the risk of harm must be grave, not merely serious. In addition, Petitioner does not seek custody of I.R. This fact mitigates, to some extent, any risk that might be presented to I.R. by Petitioner's past tendency to slap or twist arms.

Courts have also recognized that many countries of habitual residence have the capacity to protect children, including Mexico. *See Friedrich*, 78 F.3d at 1068 ("In thinking about these problems, we acknowledge that courts in the abducted-from country are as ready and able as we are to protect children. If return to a country, or to the custody of a parent in that country, is dangerous, we can expect that country's courts to respond accordingly."); *see also Nunez-Escudero*, 58 F.3d at 377.

For these reasons, the Court concludes that this evidence does not meet the high threshold of clear and convincing evidence that a return of I.R. to Mexico would present a grave risk of physical or psychological harm.

### 4. Separation from Respondent.

Respondent testified that she has bonded with I.R. and that separating them would seriously damage I.R. In addition, Respondent presented the testimony of Dr. Leonard D. Goodstein, a consulting psychologist, that separation of I.R. from Respondent would present a grave risk of psychological harm to I.R.

Although the Court does not wish to underestimate this concern, several courts have held that separation of a parent and child, although traumatic, is not itself sufficient to satisfy a grave risk exception. *See, e.g.*, *Charalambous v. Charalambous*, 627

F.3d 462, 469-70 (1st Cir. 2010) ("The district court correctly concluded that 'the impact of any loss of contact with the Mother is something that must be resolved by the courts of the Children's habitual residence.'"); *England v. England*, 234 F.3d 268, 270-72 (5th Cir. 2000) ("Courts considering this issue have uniformly found considerations such as [separation from the mother or the unsettling effects of return to the country of habitual residence] inapposite to the 'grave risk' determination."); *Nunez-Escudero*, 58 F.3d at 377 ("The district court incorrectly factored the possible separation of the child from his mother in assessing whether the return of the child to Mexico constitutes a grave risk that his return would expose him to physical or psychological harm or otherwise place him in an intolerable situation."). The Court agrees with these decisions. Separation from an abducting parent is a likely consequence in many Hague Convention cases. If the difficulty caused by such separation were deemed sufficient to satisfy the grave risk exception, the purposes of the Convention would be largely frustrated. Parents could carry their children across international borders to obtain an advantage in custody disputes and then defeat return under the Convention by virtue of the fact that return would be traumatic for the child. The Court cannot conclude that such a result was intended by the grave risk exception.

The Court finds Respondent's separation argument unpersuasive for a second reason. If the Court orders I.R. returned to Mexico, she need not return alone. Respondent could accompany her. Nothing in the law would prevent Respondent from returning to Mexico with her daughter. Indeed, it appears that Respondent is a citizen of Mexico.

Respondent did testify at the hearing that she would not return to Mexico because she does not want to subject herself to the abusive and manipulative actions of Petitioner. But the choice is hers. The Court asked Dr. Goodstein whether a return of I.R. to Mexico *with* Respondent would present a grave risk of psychological harm, and he was unable to say that it would. Thus, if the Court honors the mandate of the Convention, Respondent can choose to separate from her daughter and cause the trauma she claims is substantial,

or she can return to Mexico and retain physical custody of I.R. (Petitioner testified that he does not seek to obtain physical custody of I.R.). The Court has difficulty concluding that an abducting parent can invoke the grave risk exception simply by refusing to return to the country of habitual residence with the child.

In summary, the Court finds Petitioner's separation argument unpersuasive for two independent reasons. First, it is inconsistent with the intent of the Hague Convention. Second, because Respondent can return to Mexico with I.R. and retain physical custody of her, Respondent has failed to show by clear and convincing evidence that an order that I.R. be returned presents a grave risk of physical or psychological harm.

### 5. Cumulative Evidence.

The Court has considered carefully whether the cumulative effect of Respondent's evidence satisfies the grave risk exception. This evidence consists of Petitioner having a volatile temper, having struck Respondent on several occasions and her father on one occasion, having slapped I.R. and twisted her arm, and evidence that a separation of I.R. from Respondent would cause psychological harm. The effect of this evidence – even in its cumulative form – is mitigated substantially by the fact that Petitioner does not seek physical custody of I.R. and Respondent could choose to return to Mexico with I.R. In addition, some of the violence is quite dated and was directed at adults.

When considering the cumulative evidence, the Court must also consider evidence presented by Petitioner. His testimony, like Respondent's and I.R.'s, appeared to be genuine and credible. Petitioner presented evidence that he is nearing completion of a university degree in psychology, that he has been employed by an insurance company for six years, that his father is an executive with the insurance company, and that Petitioner provided health insurance for I.R., picked her up from school, and took her out for social events. Contrary to the suggestion that I.R. is uncomfortable in Petitioner's presence, Petitioner presented a number of photographs and videos, including a video taken the day before I.R. was removed to Arizona, showing I.R. happily interacting with Petitioner. I.R. does not appear in these videos to be at all uncomfortable in Petitioner's presence.

To the contrary, she is laughing with him, dancing with him, and wrestling with him in a swimming pool. Petitioner also presented testimony from his father and current girlfriend that he is a caring and loving father, and evidence from I.R.'s pediatrician that he was an engaged and caring parent.

When all evidence is considered, the Court cannot conclude that Respondent has presented clear and convincing evidence that returning I.R. to Mexico would present a grave risk of physical or psychological harm to I.R. Although Petitioner's past violence is clearly concerning, the fact remains that Petitioner does not seek to have I.R. returned to his physical custody and Respondent, if she chooses to do so, can accompany I.R. to Mexico and retain primary custody of her. Although Petitioner would surely seek to spend time with I.R. and to have involvement with her life as he did in the past, the Court cannot conclude that such involvement would present a "grave" risk of physical or psychological harm to I.R. in the immediate future. *Goudin*, 415 F.3d at 1037.

### C. Intolerable Situation.

This exception is also narrow. The State Department Regulations provide this explanation: "A review of deliberations on the Convention reveals that 'intolerable situation' was not intended to encompass return to a home where money is in short supply, or where educational or other opportunities are more limited than in the requested State. An example of an 'intolerable situation' is one in which a custodial parent sexually abuses the child." 51 Fed. Reg. at 10,510.

Respondent presents no evidence of an intolerable situation that is separate from the evidence discussed above. For reasons already explained, her evidence does not rise to the level of a grave risk of an intolerable situation.

### D. Wishes of the Child.

The Court may choose not to return I.R. to Mexico if such a return would be against her wishes and I.R. "has attained an age and degree of maturity at which it is appropriate to take account of [her] views." Convention, Art. 13. This exception, like the others, is to be applied narrowly. 42 U.S.C. § 11601(a)(4).

The Hague Convention provides no specific age at which a child is deemed sufficiently mature for his or her opinion to be considered. *Tsai-Yi Yang v. Fu-Chiang Tsui*, 499 F.3d 259, 279 (3d Cir. 2007). Indeed, "[g]iven the fact-intensive and idiosyncratic nature of the inquiry, decisions applying the age and maturity exception are understandably disparate." *de Silva v. Pitts*, 481 F.3d 1279, 1287 (10th Cir. 2007).

The State Department Regulations explain that "a child's objection to being returned may be accorded little if any weight if the court believes that the child's preference is the product of the abductor parent's undue influence over the child." 51 Fed. Reg. at 10,510. Such influence need not be intentional or sinister; it may simply result from the child's retention by one parent. *Hirst v. Tieberghien*, 947 F. Supp. 2d 578, 598 (D.S.C. 2013); *Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 204 (E.D.N.Y. 2010).

It was evident during I.R.'s testimony at the hearing that she is bright, capable, and able to express her views. I.R. stated unequivocally that she does not wish to return to Mexico. When asked why, however, she said: "I don't like seeing my mom sad and I don't want to be sad because of that." Court's Livenote Transcript, 7-9-14. When asked leading questions as to whether her father frightens her and whether that is a reason she does not want to return to Mexico, she said yes. When then asked again how she would feel about returning to Mexico, she said: "Really sad and frustrated because my mom would be really sad and I don't want to not be myself. I like being myself." *Id.* I.R. also testified that she enjoys her new school, is doing well, and has many friends, but she did not give these as reasons when asked why she did not want to return to Mexico,

After careful reflection, the Court concludes that I.R. has not reached the age of maturity sufficient for the Court to rely upon her objection in its ruling in this case. Although clearly capable, I.R. is still a young girl. She appeared very much her age – nine years – during her testimony and through her demeanor in the courtroom for the remainder of the hearing. In addition, her primary reason for not wanting to return to Mexico – that it would make her mother sad – appeared to be more a reflection of

Respondent's feelings than I.R.'s.[3]

I.R. was recalled to the witness stand after Petitioner had presented videos of her having fun with him. When asked a leading question, she testified that she was not really happy when she was with Petitioner, testimony that appeared clearly contrary to the images in the videos. When asked why, she said that when her father watched T.V. with her or took her to the movies, they watched things he wanted to see. When asked whether she enjoyed the time she spent with him in the swimming pool as depicted in one of the videos, she said no because she got sunburned. These answers, as well as those provided during direct questioning about her mother being unhappy, did not reflect a mature evaluation of whether I.R. should be returned to Mexico.

It also appeared clear to the Court that I.R. has been influenced in her views by her mother and her mother's parents and other family members. The Court does not attribute *any* sinister motive to Respondent or her family in this respect. The Court rather concludes that it is likely the result of their close and loving support. I.R. is surrounded in Arizona by a loving family. She sat with her grandparents and other family members throughout the hearing, leaned on them frequently, looked at them in reaction to testimony during the proceeding, and often responded similarly in her own reactions. It appeared clear that I.R. is fully embedded in her Arizona family and comfortable in that setting. Moreover, she has not seen Petitioner in more than one year, has spoken with him only infrequently, and has not spoken with him at all in the last six months. The Court concludes that the views expressed during her testimony have been influenced by her separation from Petitioner and by her current family setting.

---

[3] Respondent proposed that Dr. Goodstein testify about I.R.'s maturity level. The Court concluded that such testimony would come dangerously close to an expert testifying on the credibility of another witness, which generally is not allowed, and the Court therefore did not permit the testimony. The Court informed Respondent's counsel that they could seek to present Dr. Goodstein's maturity testimony after I.R. had testified, but they did not do so. Dr. Goodstein's expert report (Exhibit 131) was admitted in evidence without objection and the Court has read it. It includes the results of a vocabulary test administered to I.R. and Dr. Goodstein's opinion regarding her maturity and ability. The Court finds Dr. Goodstein's opinion and test to be marginally relevant on the issue of maturity. The Court concludes that its own observations of I.R.'s testimony and demeanor outweigh Dr. Goodstein's opinions on the same issues.

- 13 -

1  Respondent's counsel called the Court's attention to an "autobiography" written
2 by I.R. at school. The document mentions her father's anger and discipline and describes
3 them as unhappy events in her life. Respondent's counsel emphasized that this
4 autobiography was written by I.R. on her own, with no input from her family. Although
5 this is true, the Court concludes that I.R.'s view of her father has surely been influenced
6 by her family. Moreover, the concerns expressed in the autobiography would primarily
7 be relevant if I.R. were being asked to return to her father's custody. She is not. And as
8 explained above, Respondent's ability to return to Mexico with I.R. would significantly
9 impact any possible threat to I.R. and concerns about being separated from her mother.

10  The Court concludes that Respondent has not shown by a preponderance of the
11 evidence that I.R.'s views are sufficiently independent and based on sufficient age and
12 maturity for the Court to given them deference. Respondent has not satisfied this narrow
13 except to the Hague Convention.

14 **IV.    Conclusion.**

15  The Court wishes again to emphasize what it is *not* deciding. The Court is not
16 deciding who is the better parent, which location would be preferable for I.R., or who
17 should have custody of I.R. Nor is the Court ordering that physical custody of I.R. be
18 returned to Petitioner.

19  The Court's ruling is narrow. The Court finds that Petitioner has made the
20 showing required under the Hague Convention for a mandatory return of I.R. to Mexico.
21 The Court also concludes that Respondent has not established, by the required levels of
22 proof, any of the narrow exceptions to the return mandate. Applying the law to the facts
23 as accurately it can, the Court concludes that it must grant the petition and order that I.R.
24 be returned to Mexico until the courts of that country can resolve custody issues.

25  **IT IS ORDERED:**
26  1.   The Petition for Return of Child Under the Hague Convention (Doc. 1) is
27       **granted.**
28  2.   Respondent shall return I.R. to Mexico within 20 days of this order, and

I.R. shall remain in Mexico until the custody proceedings in the Mexican courts have been concluded.

Dated this 15th day of July, 2014.

_____
David G. Campbell
United States District Judge